Cite as 2021 Ark. App. 222

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–20–99

| | | |
|---|---|---|
| | | **Opinion Delivered:** May 5, 2021 |
| MALVIN BYNUM | | APPEAL FROM THE FAULKNER |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 23CR-17-667] |
| V. | | |
| | | HONORABLE CHARLES E. |
| | | CLAWSON, JR., JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Malvin Bynum appeals after he was convicted by a Faulkner County Circuit Court jury of battery in the first degree while employing a firearm as a means of committing battery in the first degree. He was sentenced to serve a total of 180 months' imprisonment in the Arkansas Department of Correction. On appeal, appellant argues that his conviction should be reversed and remanded because the circuit court erred in denying his motion for directed verdict. We affirm.[1]

---

[1]Previously, appellant's attorney had filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 4-3(k) (2019) and *Anders v. California*, 386 U.S. 738 (1967). However, because counsel's no-merit brief was not in compliance with *Anders* and Rule 4-3(k), we ordered rebriefing and denied counsel's motion to withdraw without prejudice. *Bynum v. State*, 2021 Ark. App. 16. Appellant's counsel has now chosen to file the instant substituted merit brief.

## I. *Relevant Facts*

Pertinent to this appeal, appellant was charged by amended information with battery in the first degree in violation of Arkansas Code Annotated section 5-13-201(a)(8) (Repl. 2013), a Class B felony, and the State further alleged that appellant's sentence should be enhanced pursuant to Arkansas Code Annotated section 16-90-120 for having employed a firearm as a means of committed the offense.[2]  A jury trial was held on October 23, 2019.

The victim, Julius Brown, testified that he and appellant were neighbors in an apartment complex.  On the morning of July 3, 2017, he and appellant smoked a "stogie" together at appellant's apartment.  Brown observed a .32 caliber handgun on appellant's table.  Brown returned to his apartment.  Later in the day, Brown texted appellant and requested appellant to turn down the loud music.  According to Brown, appellant knocked on his door a short time later.  Brown opened the door carrying a baseball bat for protection.  Appellant pointed a handgun at his chest.  Brown testified that he thought the handgun was a .32 caliber.  Brown stated that he told appellant, "Y'all, you need to get away from my door with that."  Brown testified that as he turned away, the appellant shot him under his armpit and that the bullet exited his lower back.  Thereafter, Brown swung his baseball bat, hitting the side of the door and dropping the bat on the floor.  Brown testified that he saw appellant running back up the hill away from the apartment.  Brown confirmed that appellant was the only individual present when he opened the door.

---

[2]Appellant was also charged with failure to appear and attempted murder in the first degree.  However, the jury acquitted appellant of attempted murder in the first degree, and the State nolle prossed the failure-to-appear charge.

Virginia Mattison, a long-time friend of Brown, testified that Brown called her immediately after the incident. Brown told her that appellant had shot him, and Brown asked her to call 911. After she called 911, she went over to Brown's apartment. Brown came out with a bloody sheet around him. Appellant told Mattison again that appellant had shot him over some music.

One of the investigators, Andy Cook, testified that he recovered a small shell casing at the scene. Law enforcement arrested appellant shortly after the incident; however, they did not find any weapons. Investigator Kent Hill testified that the shell casing found at the scene was from a .25 caliber bullet. When Investigator Hill interviewed appellant, appellant admitted that he had a confrontation with Brown over loud music and that he had gone to Brown's apartment. However, appellant told Investigator Hill that Brown threatened him with a baseball bat but that it was a third person that shot Brown. Appellant denied having shot Brown but would not identify the shooter to the investigator.

After the State rested its case, appellant moved for a directed verdict. As to his charge of battery in the first degree, appellant argued that there was no evidence that appellant had a firearm or was the one that shot Brown. The circuit court denied the motion.

Appellant testified on his own behalf. Appellant admitted that he knocked on Brown's door to confront him about the music and text message. However, appellant testified that another man named "Rip" (who was a "black man" and wearing all black clothing) was with him and that it was Rip who had shot Brown when Brown was about to swing the baseball bat at him. Appellant further testified that he did not know Rip very well and that he could not provide any further information about Rip to law enforcement.

3

Appellant renewed his directed-verdict motion at the close of all evidence, and the circuit court denied his motion. The jury found appellant guilty of battery in the first degree and that appellant had employed a firearm as a means of committing battery in the first degree. This appeal followed.

## II. *Sufficiency*

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id*. We will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id*. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id*. Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*.

A criminal defendant's intent or state of mind is seldom apparent. *Wells v. State*, 2012 Ark. App. 596, 424 S.W.3d 378. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence, but may be inferred from the facts and circumstances. *Id*. Because intent cannot be proved

4

by direct evidence, the fact-finder is allowed to draw upon common knowledge and experience to infer it from the circumstances. *Id.* Due to the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his acts. *Id.*

As charged in this case, a person commits battery in the first degree if with the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a firearm. Ark. Code Ann. § 5-13-201(a)(8) (Supp. 2019). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). Additionally, any person convicted of any offense that is classified by the laws of this state as a felony who employed any firearm of any character as a means of committing or escaping from the felony, in the discretion of the sentencing court, may be subjected to an additional period of confinement in the Arkansas Department of Correction for a period not to exceed fifteen years. Ark. Code Ann. § 16-90-120 (Repl. 2016).

On appeal, appellant argues that there is no dispute that Brown was shot while standing at his front door. However, appellant argues that the State failed to provide substantial evidence—either direct or circumstantial—that appellant was the individual who shot Brown. Although appellant acknowledges that Brown identified appellant as the person who shot him, appellant argues that Brown's testimony was inconsistent and there was no corroboration of Brown's testimony. Appellant specifically points out that Brown first used the word "y'all" but later testified that only appellant was at his front door.

Appellant also points out that Brown may not have seen Rip because Rip was wearing all dark-colored clothing. Further, appellant explains that Brown testified that he had remembered seeing a .32 caliber gun on appellant's table; yet, law enforcement only found a shell casing from a .25 caliber bullet at the scene. In essence, appellant contends that Brown's testimony was not credible and that there was no corroborating evidence to indicate that it was him who shot Brown.

Notwithstanding appellant's argument, we find that Brown's testimony that it was appellant who shot him constitutes substantial evidence to support the jury's verdict. We have held that the uncorroborated testimony of one State's witness can be sufficient to sustain a conviction. *Watkins v. State*, 2009 Ark. App. 124, 302 S.W.3d 635 (citing *Gray v. State*, 318 Ark. 601, 888 S.W.2d 302 (1994)). Weighing the evidence, reconciling conflicts in the testimony, and assessing credibility are matters exclusively for the trier of fact—in this case, the jury. *West v. State*, 2017 Ark. App. 416, 530 S.W.3d 355. The jury may accept or reject any part of a witness's testimony. *Id.* Inconsistent testimony does not render proof insufficient as a matter of law, and one eyewitness's testimony is sufficient to sustain a conviction. *Id.* Accordingly, we affirm appellant's conviction.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*McKay Law Firm, PLLC*, by: *Matthew McKay*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.